UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN STEINBERG,<br><br>    Plaintiff,<br><br>  v.<br><br>VINCENT C. GRAY, et al.,<br><br>    Defendants. | Civil Action 09-01299 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Steinberg brings this action against the District of Columbia and various District officials (collectively, "defendants")[1] to redress what he alleges to be the wrongful termination from his job as an emergency medical technician ("EMT") with the District's Fire and Emergency Medical Services Department ("Fire Department"). Steinberg contends that defendants violated his procedural and substantive due process rights during the period following his removal. Before the Court is defendants' motion to dismiss for failure to state a claim [#18]. Upon consideration of the motion, the opposition thereto, and the record of the case, the Court concludes that the motion should be granted in part and denied in part.

---

[1] The officials against whom Steinberg brought this suit are: Adrian Fenty, in his official capacity as mayor; Dennis L. Rubin, in his official capacity as chief of the Fire and Emergency Medical Services Department ("Department"); and Shelly Robinson-Smith, in her official capacity as the Department's "fiscal officer." Am. Compl. ¶¶ 3–6. Rubin and Fenty, however, no longer hold their official positions. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current mayor, Vincent C. Gray, and the current fire chief, Kenneth B. Ellerbe, are substituted as defendants in this suit. Steinberg also named the Department in this lawsuit, but now concedes that the Department is not an appropriate defendant. Pl.'s Opp'n to Mot. for J. on the Pleadings and Mot. to Dismiss ("Pl.'s Opp'n to Mot. for J. On the Pleadings") at 4.

# I. BACKGROUND

Taking as true the facts in Steinberg's Amended Complaint, *see City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009), Steinberg's dispute with the Department began in 1997, when he was removed from his position as an EMT. Am. Compl. ¶ 9. Eleven days after being terminated, Steinberg appealed his dismissal, filing a petition with the Office of Employee Appeals ("OEA").[2] *Id.* ¶ 10. Steinberg won his appeal. In an "initial decision" that was issued in 2004, the OEA determined that Steinberg should be reinstated and reimbursed for pay and benefits lost as a result of his termination. *Id.* ¶ 14.[3]

The OEA's order did not go into effect immediately. The Department had 35 days from the time the OEA issued its decision to file a petition for review with the OEA's Board. *Id.* ¶ 15; D.C. CODE § 1-606.03(c). The Department did not appeal, and the decision became final on June 16, 2004. *Id.* ¶ 16. The Department was thus required to comply with the OEA decision no later than July 17, 2004. *Id.*

Despite the OEA's mandate that Steinberg be reinstated and reimbursed for back pay by July 17, 2004, the Department did not comply. *Id.* ¶¶ 16–20. It also did not challenge the OEA order by seeking review of the award in the Superior Court of the District of Columbia. *Id.* ¶ 17; D.C. CODE § 1-606.03(d) ("Any employee or agency may appeal the decision of the Office [of Employee Appeals] to the Superior Court of the District of Columbia for a review of the record

---

[2] The OEA is a "quasi-judicial body empowered to review final agency decisions affecting, *inter alia,* performance ratings, adverse actions, and employee grievances." *Stokes v. District of Columbia*, 502 A.2d 1006, 1009 (D.C. 1985); *see also* D.C. CODE § 1-606.1.

[3] The initial decision also required that the Department file documents showing compliance within 30 days after the order became final. Am. Compl. ¶ 14.

2

and such Court may affirm, reverse, remove, or modify such decision, or take any other appropriate action the Court may deem necessary."). The parties pursued settlement discussions, but those proved unsuccessful. Am. Compl. ¶ 17.

Four years went by after which the OEA made additional attempts to enforce compliance with its order. On August 13, 2008, the OEA issued an addendum decision on compliance in which it certified the matter to the OEA's General Counsel's office for enforcement. *Id.* ¶ 18; D.C. CODE § 1-606.09 (providing that if the OEA "determines that the respondent has not complied with an order within 30 calendar days of service of the order, the Office shall certify the matter to the General Counsel and any agency that may be appropriate for enforcement"). Subsequently, on September 11, 2008, the General Counsel's office issued an order directing that the Fire Department submit documents to the OEA by October 17, 2008 verifying compliance with the OEA's order. Am. Compl. ¶ 19. The Fire Department did not submit any such verification. Instead, on January 29, 2009, four and a half years after the date on which the Fire Department was ordered to reinstate Steinberg and provide him back pay, the Fire Department filed a response indicating that it refused to comply with the OEA determination. *Id.* ¶ 20. As of the time of the parties' most recent filings, Steinberg has neither been reinstated nor received back pay.

On July 10, 2009, almost five years Fire after the Department was required to comply with the OEA's decision, Steinberg brought this action. Steinberg contends that the Department's behavior amounted to an "illegal deprivation of his property without due process of law . . . ." *Id.* ¶ 22. Steinberg specifies that "having obtained a final judgment" from the OEA, he "has a property right in such a judgment." Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s

Opp'n") at 4. Steinberg continues that, "[t]he unilateral decision of the Defendants to simply belatedly declare on January 9, 2009, to the Plaintiff (and the Office of the General Counsel) that they refused to pay what they owed" violated his procedural and substantive due process rights because the defendants did so "without participating at all in any procedural or substantive hearing." *Id.* Steinberg disavows pursuing any due process violations stemming from the "firing process" itself. *Id.*

Because Steinberg brings this lawsuit against the District and District officials, any due process rights Steinberg enjoys are pursuant to the Due Process Clause of the Fifth Amendment. U.S. CONST. amend. V; *Butera v. District of Columbia*, 235 F.3d 637, 646 n.7 (D.C. Cir. 2001). His vehicle for this lawsuit is 42 U.S.C. § 1983 ("Section 1983"), which provides a cause of action for violations of constitutional rights.[4]

## II. ANALYSIS

### A. Legal Standard

Under Federal Rule of Civil Procedure Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially

---

[4] Section 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983.

4

plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In evaluating whether a complaint is sufficient to withstand a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**B.     The Official-Capacity Damages Claims Must be Dismissed, but the Official-Capacity Claims for Injunctive Relief Must Remain**

Defendants argue that Steinberg's Section 1983 claims against Gray, Ellerbe, and Robinson-Smith are official-capacity claims and should be dismissed. According to defendants, these claims amount to claims against the District itself, and Steinberg should look to the District for relief. Def.'s Mem. Supporting Def.'s Mot. to Dismiss ("Defs.' Mot. to Dismiss") at 8. Steinberg does not contest that he has sued Gray, Ellerbe, and Robinson-Smith in their official capacities. He nonetheless rejoins that these claims should not be dismissed because keeping them in the case would not result in duplication.[5] The Court agrees in part with defendants, and in part with Steinberg.

---

[5] Steinberg makes this and other arguments in his Opposition to Motion for Judgment on the Pleadings and Motion to Dismiss Complaint [#8], not in his Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [#20]. Steinberg's opposition to the motion for judgment on the pleadings was in response to defendants' attempt to defeat Steinberg's initial complaint. After the parties submitted briefing related to Steinberg's first complaint, Steinberg moved to amend his complaint [#10], and the Court granted Steinberg's motion [#16]. Defendants then moved to dismiss Steinberg's amended complaint—the motion presently before the Court. In Steinberg's opposition to the motion to dismiss, Steinberg "incorporate[s] by reference" his earlier brief written in opposition to defendants' motion for judgment on the pleadings and to dismiss. Pl.'s Opp'n at 3. The Court will consider the arguments contained in the earlier briefing, as the standard to be applied in evaluating motions for judgment on the pleadings is the same as that under Rule 12(b)(6). *Dale v. Exec. Office of the President,* 164 F. Supp. 2d 22, 24 (D.D.C. 2001).

Section 1983 imposes liability upon "person[s]" who, acting under color of law, cause a deprivation of rights, privileges, or immunities guaranteed by the Constitution and laws of the United States. 42. U.S.C. § 1983. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) the Supreme Court held that neither States nor state officials sued in their official capacities "are 'persons' under § 1983." . In so concluding, the Court reasoned that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." *Id.; see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself"). Thus, under *Will* and *Graham*, government actors sued for damages in their official capacities are considered "the State" for purposes of Section 1983. Where, as here, the municipality is also sued, such claims should be dismissed as duplicative. *See, e.g.*, *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005).

In this case, then, Steinberg's claims against Gray, Ellerbe, and Robinson-Smith should be dismissed if the claims are equivalent to claims against the District. In determining whether Steinberg's suit against Gray, Ellerbe, and Robinson-Smith should be treated as a suit against the District, the Court is guided again by the Supreme Court's opinion in *Will*. In addition to the discussion referenced above, the Supreme Court observed that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity' actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71, 71 n.10 (quoting *Graham*, 473 U.S. at 167 n.14). Accordingly, an official-capacity suit for money damages is treated as a suit against the state or local entity; an official-

6

capacity suit for injunctive relief, however, is a suit against a "person" and not "the State." *Cf. Hedgepeth v. WMATA*, 386 F.3d 1148, 1152 n. 3 (D.C. Cir. 2004) (allowing claims for injunctive relief against a District official sued in his official capacity).

Applying these principles to the facts of this case, the Court observes that Steinberg seeks both money damages and injunctive relief. Am. Compl. at 6–7. Steinberg's official-capacity claims against Gray, Ellerbe, and Robinson-Smith for money damages are the equivalent of claims against the District. Steinberg acknowledges that the District is the real party being sued. He nonetheless asks that the Court not dismiss the official-capacity claims because "one Assistant Attorney General is representing all named defendants" and, as such, "any duplication in the named defendants will not result in unnecessary work or duplication of efforts." Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 5. This argument is misguided. Irrespective of whether defendants' resources are being wasted, courts consider it a waste of *judicial* resources to simultaneously maintain official-capacity suits for money damages and damages suits against the District. *See Robinson*, 403 F. Supp. 2d at 49 (noting that such claims are considered an "inefficient use of judicial resources") (quoting *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997)). For that reason, it is routine in this judicial district to dismiss official-capacity claims for money damages where the District has also been sued. *Id.*

Steinberg further argues that the official-capacity claims should not be dismissed because he has alleged that "[Ellerbe] and Robinson-Smith are responsible for the refusal to comply with the Orders to reinstate Plaintiff." Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 5. This argument is also inapposite. The relevant question is not who is responsible for the disputed conduct. Instead, courts dismiss official-capacity claims because such claims are actually suits

7

against an official's office. *Will*, 491 U.S. at 71. Because of the redundancy, the Court dismisses the official-capacity claims against Gray, Ellerbe, and Robinson-Smith for money damages.

As to Steinberg's official-capacity claims for injunctive relief, these claims are not the equivalent of claims against the District. *Will*, 491 U.S. at 71, 71 n.10. Consequently, they are not redundant. The Court will therefore not dismiss Steinberg's claims for injunctive relief against Gray, Ellerbe, or Robinson-Smith.

**C.     Steinberg Has Stated a Claim for Municipal Liability**

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "*Respondeat superior* or vicarious liability will not attach [to municipalities] under Section 1983." *Id.* The District of Columbia, then, is subject to liability under Section 1983 only when its own "policy or custom . . . inflicts the injury . . . ." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Liability exists not only for formal policies "approv[ed] through the body's official decisionmaking channels," but also for government practices "so permanent and well settled as to constitute a 'custom or usage . . . .'" *Id.* at 691 (citation and quotation marks omitted). The policy or custom must itself be the "moving force" behind the constitutional violation. *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting *Monell*, 436 U.S. at 694).

In this case, Steinberg contends that "Defendants' refusal to comply with the Orders is pursuant to a custom or policy or the decision of final policymakers." Pl.'s Opp'n to Mot. for J. on the Pleadings at 9. Defendants, however, argue that Steinberg "does not plead facts to show how the alleged actions of the District agency or of the District employees were made pursuant to

8

some custom, policy, or practice of the District." Defs.' Mot. to Dismiss at 10. According to defendants, Steinberg's assertions regarding a policy or custom are conclusory, and therefore cannot survive a motion to dismiss. Defendants' argument lacks merit.

A complaint "need not allege all that a plaintiff must eventually prove." *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996). Here, Steinberg alleges that unknown "final policymakers" within the District government "acted pursuant to a custom or policy of the District of Columbia not to pay wages and benefits owed by the Agency to its employee." Am. Compl. ¶ 28. Because one of the ways in which a plaintiff can establish the existence of a municipal policy is through the actions of an individual with final policymaking authority, *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997),[6] Steinberg's allegations are sufficient at this early pleading stage. Moreover, it does not matter that Steinberg has not yet named a policymaker responsible for his treatment; he need not do so at this stage in the proceedings. *Amons v. District of Columbia*, 231 F. Supp. 2d 109, 115–16 (D.D.C. 2002). If Steinberg relies on the policymaker theory to establish a municipal policy, he will eventually have to identify a specific individual whom he can prove had final policymaking authority. *Williams v. Johnson*, 537 F. Supp. 2d 141, 155 (D.D.C. 2008). For pleading purposes, however, Steinberg's amended complaint is sufficient to state a claim. Accordingly, defendants' motion to

---

[6] The other ways in which a policy can be set, thus triggering municipal liability, are where the municipality expressly adopts an official policy that results in a constitutional violation; where a policymaker knowingly adopts the actions of his subordinates so that those actions become the municipality's custom; and where the municipality has been deliberately indifferent in responding to a need. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

dismiss Steinberg's amended complaint on the grounds that he has not adequately plead the existence of a municipal policy will be denied..

C.      **Steinberg's Claim is Not Barred by the Statute of Limitations**

The parties do not dispute that the relevant statute of limitations for a Section 1983 violation in the District of Columbia is three years. *Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998); *see also* Pl.'s Opp'n at 11; Def.'s Mot. to Dismiss at 11. Steinberg brought this lawsuit on July 10, 2009. Therefore, if Steinberg's cause of action accrued prior to July 10, 2006, it is barred by the statute of limitations.

The statute-of-limitations clock normally begins to run "when the factual and legal prerequisites for filing suit are in place." *3M Co. v. Browner,* 17 F.3d 1453, 1460 (D.C. Cir. 1994). Put another way, "an actionable claim accrues, and the statute of limitations begins to run, when a suit thereon could first be maintained to a successful conclusion." *Toomey v. Cammack*, 345 A.2d 453, 455 (D.C. 1975). In order to determine if Steinberg's claim is timely, the Court must first determine when Steinberg could have brought suit to challenge the Fire Department's refusal to abide by the OEA's order.

Defendants argue that Steinberg had notice of his cause of action on July 17, 2004, the date the Fire Department was required to comply with the OEA's decision but failed to do so. Defs.' Mot. to Dismiss at 12. Because Steinberg did not file this lawsuit until July 10, 2009, the District argues that the case is barred by the statute of limitations. Steinberg responds that the appropriate trigger for the statute-of-limitations clock is not July 17, 2004, but rather January 29, 2009. Pl.'s Opp'n to Mot. for J. on the Pleadings at 10. That is when the Fire Department responded to the OEA General Counsel's effort to enforce compliance by specifically stating that

10

it would not comply with the OEA's order. Am. Compl. ¶ 20. According to Steinberg, it is the Fire Department's refusal to comply with the OEA order that forms the basis for his lawsuit, as that refusal allegedly violated his due process rights. Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings at 10–11; Pl.'s Opp'n at 4. Steinberg contends that he "only received notice of this conduct on January 29, 2009" when the Department communicated that it would not abide by OEA's decision. Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings at 11.

The question in this case is when Steinberg's claim first accrued such that he could have brought this lawsuit. The face of Steinberg's amended complaint indicates that the Fire Department specifically stated that it would refuse to comply with the OEA order on January 29, 2009, Am. Compl. ¶ 20, and that it had never before specifically stated as much, *see generally* Am. Compl. Defendants' argument—that Steinberg received notice of his cause of action on July 17, 2004, the date the Fire Department was required to comply with the OEA's decision—essentially asks the Court to make a credibility determination. That is, defendants ask the Court to accept their account of when Steinberg received notice. Such credibility determinations are not appropriate at this stage in the proceedings. To the contrary, in ruling on a motion to dismiss, the Court must accept Steinberg's allegations as true. *Erickson*, 551 U.S. at 94. Accordingly, the Court concludes that the statute-of-limitations clock began as soon as Steinberg received notice on January 29, 2009, that the Fire Department would not abide by the OEA's decision. The basis of Steinberg's legal claim is that the Fire Department refused to honor the terms of a "final judgment" he obtained from the OEA. Construing Steinberg's complaint in the light most favorable to him, Steinberg learned of the Fire Department's refusal to comply on January 29, 2009. Thus, as of January 29, 2009, Steinberg could have brought this

lawsuit. Because Steinberg filed his complaint within three years of that date, his action is timely.

**D.      Procedural Due Process**

Defendants seek dismissal of Steinberg's procedural due process claim, arguing that Steinberg has received all process that he is due. In support of this argument, defendants state that Steinberg "appealed the termination through the OEA, and was successful." Defs.' Mot. to Dismiss at 11. Steinberg counters that defendants have mischaracterized his procedural due process claim, and that dismissal is therefore inappropriate. Steinberg's position has merit..

A procedural due process violation occurs when state action deprives a person of his life, liberty, or property interests without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Here, defendants do not make any arguments as to whether Steinberg has any cognizable property interest that has been threatened through governmental action. For purposes of resolving this motion, therefore, the Court assumes that Steinberg has such an interest. Defendants do argue that Steinberg has received all the process he is due. Specifically, they argue that because Steinberg's challenge to his dismissal advanced through the OEA process, he has received all the procedural safeguards to which he is entitled. As Steinberg points out, this argument misconstrues his complaint. The argument assumes that Steinberg asserts a property

interest in his employment, and that Steinberg argues that he has been deprived of the proper procedures for challenging the deprivation to that interest. Steinberg's amended complaint, however, makes no such claim. Rather, Steinberg alleges that defendants "refused to . . . comply with the final Order of the Office of Employee Appeals," and that, in so doing, defendants failed to provide him with "any procedural protections." Am. Compl. ¶ 27. Fairly read, then, Steinberg's complaint claims a property interest in the OEA's "final Order," not his employment. Defendants cannot succeed in dismissing Steinberg's procedural due process claim by mischaracterizing it. Instead, defendants have to directly confront the allegations in Steinberg's complaint and attack his ability to state a claim based on those allegations. Because defendants have not done so, their motion to dismiss Steinberg's procedural due process claim must be dened.

E.   **Steinberg May Not Recover Punitive Damages Against the District**

Defendants move to dismiss Steinberg's claim for punitive damages against the District of Columbia. In support of this request, they cite, inter alia, *City of Newport v. Fact Concerts, Inc.*, which held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." 453 U.S. 247, 271 (1981).[7] In a footnote, the Supreme Court noted a possible exception, suggesting "[i]t is perhaps possible to imagine an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights." *Id.* at 267 n.29.

---

[7] Defendants also argue that, (1) Steinberg has failed to plead facts that Gray, Ellerbe, or Robinson-Smith acted with the requisite state of mind to impose punitive damages, and (2) an award of punitive damages would not deter wrongful conduct. Defs.' Mot. to Dismiss at 13–14. Because Steinberg does not respond to these arguments, the Court treats them as conceded. *See Lewis v. District of Columbia*, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011).

Here, Steinberg's only cause of action is Section 1983, and the District, of course, is a municipality. *Butera v. District of Columbia*, 235 F.3d 637, 658 (D.C. Cir. 2001). Because Steinberg neither alleges any facts suggesting that the District's taxpayers are responsible for the alleged violation of his rights nor argues that he may later adduce such facts,[8] he is unable to seek punitive damages. *See E. Trans-Waste of Md., Inc. v. District of Columbia*, 2006 WL 167665, at *5 (D.D.C. Jan. 23, 2006) (citing *Fact Concerts* and dismissing plaintiff's claim for punitive damages against the District of Columbia because the plaintiff failed to allege any facts suggesting the District's taxpayers were responsible for the alleged constitutional violations).

Steinberg's only argument against dismissing his claim for punitive damages is that he may, at a future stage in the proceedings, be able to adduce evidence that "the District of Columbia's 'policymakers have intentionally adopted the unconstitutional policy that caused the damages in question.'" Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 11 (quoting *Daksalea v. District of Columbia*, 227 F.3d 443, 447 (D.C. Cir. 2000)). As support for this argument, he cites *Daksalea*, 227 F.3d at 447. The *Daksalea* case, however, is inapposite. Although the *Daksalea* court stated that punitive damages may be available where a policymaker "intentionally adopted the unconstitutional policy that caused the damages in question," the court made this statement in a portion of the opinion that addressed the availability of punitive

---

[8] In opposing defendants' punitive damages argument, Steinberg quotes the language from the *Fact Concerts* footnote in which the Supreme Court created the exception for cases where a municipality's taxpayers bear responsibility. Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 11. Steinberg, however, makes no argument whatsoever that the District's taxpayers bear responsibility, or that he should be allowed discovery in order to demonstrate that they do. The Court thus understands Steinberg to not maintain that his case falls within the "extreme" exception for when a municipality may be liable for punitive damages under Section 1983. *Fact Concerts*, 453 U.S. at 267 n.29.

damages for a claim brought under D.C. law—not Section 1983. *Id.* Far from creating a "municipal policymaker" exception to the rule for punitive damages under Section 1983, the court observed that punitive damages were not available against the District under Section 1983. *Id.* ("Daskalea did not seek punitive damages under 42 U.S.C. § 1983, conceding that she was not eligible for them in light of the Supreme Court's decision in *City of Newport v. Fact Concerts, Inc.*"). The *Daskalea* language regarding policymakers is thus irrelevant where, as here, a plaintiff's only claim against a municipality is brought pursuant to Section 1983. Accordingly, Steinberg may not seek punitive damages against the District.[9]

### III. CONCLUSION

For the foregoing reasons, it is this 30th day of September 2011, hereby

**ORDERED** that defendants' motion to dismiss [#18] is **GRANTED IN PART** and **DENIED IN PART**.

Henry H. Kennedy, Jr.
United States District Judge

---

[9] Defendants also argue that Steinberg's request for injunctive relief should be dismissed under Rule 12(b)(6), since Steinberg has failed to show "(1) a likelihood of success on the merits, (2) that the plaintiff will suffer irreparable injury absent an injunction, (3) that a balancing of the hardships to the defendants or other interested parties weighs in favor of the plaintiff, and (4) that the public interest favors granting the injunction." Defs.' Mot. to Dismiss at 14. This argument must fail. "'[I]njunctive relief is not a claim but a remedy,' making a motion to dismiss under Rule 12(b)(6) . . . an inappropriate method of challenge." *Simba v. Gray*, 754 F. Supp. 2d 19, 23 (D.D.C. 2010) (quoting *Corral v. Homeeq Servicing Corp.*, 2010 WL 3927660, at *7 (D. Nev. Oct. 6, 2010)). The question of whether Steinberg is entitled to injunctive relief will be decided at a later stage of this litigation.