UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVE STEINBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09-cv-1299 (RCL) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

In 2004 the District of Columbia Office of Employee Appeals (OEA) ordered the District of Columbia Fire and Emergency Medical Services Agency (FEMS) to reinstate plaintiff Steve Steinberg as an Emergency Medical Technician (EMT) and award him back pay. For eight years the agency did neither. Mr. Steinberg filed this suit alleging violations of his substantive and procedural due process rights. Now pending before the Court is defendants' Motion for Summary Judgment. Upon review of defendants' motion, Mr. Steinberg's opposition, defendants' reply, applicable law, and the record of this case, and for reasons stated in this Memorandum Opinion, this Court will GRANT defendants' motion in part and DENY it in part.

**II.   BACKGROUND**

In January 1997 Mr. Steinberg was terminated from his position as an EMT with FEMS. *See* Defs. Statement of Uncontested Material Facts ¶¶ 1-2; *accord* Pl. Statement of Genuine Issues ¶¶ 1-2. Mr. Steinberg timely appealed his termination to the Office of Employee Appeals

(OEA),[1] where, several years later, he ultimately prevailed. Defs. Statement ¶¶ 5-6; *accord* Pl. Statement ¶¶ 5-6. In May 2004, the OEA reversed the agency's action removing Mr. Steinberg, ordered that he be returned to the position he held prior to removal, and ordered FEMS to reimburse him for all pay and benefits lost as a result of his termination. Defs. Statement ¶ 5; *accord* Pl. Statement ¶ 5; *see also* Defs. Ex. A; Pl. Ex. A. The agency had an opportunity to appeal, but did not do so, leaving the initial decision to become final on June 16, 2004. *See* Defs. Ex. F at 4. The order provided that FEMS had thirty days from the date of finality to comply.

Four years later, FEMS had neither reinstated nor compensated Mr. Steinberg. On his motion in September 2008 the OEA ordered FEMS to submit documentation verifying its compliance with the 2004 order by October 17, 2008. Pl. Br. at 3; Defs. Statement ¶ 14; Defs. Ex. F. FEMS missed this deadline, and filed a response in January 2009 stating that it could not comply with the order until certain conditions were satisfied. Defs. Statement ¶ 15; Defs. Ex. D. Specifically, the agency claimed that it could only reinstate Mr. Steinberg as an EMT as ordered if he abandoned his claim that he was "permanently and totally disabled" and instead presented himself as an employee who was "ready, willing, and able" to return to this position. *Id.*; *accord* Pl. Statement ¶ 15.

Six months later, on July 15, 2009, Mr. Steinberg filed this action. *See* Complaint [1]. He claims that FEMS' non-compliance with OEA's 2004 and 2008 decisions violated his substantive and procedural due process rights under the Fifth Amendment, and requests both money damages and injunctive relief. On September 30, 2011, Judge Kennedy ruled on defendants' motion to dismiss Mr. Steinberg's complaint, dismissing his damages claims against individual defendants named in their official capacities and for punitive damages, allowing Mr.

---

[1] OEA is a "quasi judicial body empowered to review final agency decisions affecting, *inter alia*, performance ratings, adverse actions, and employee grievances." *Steinberg v. Gray*, 815 F. Supp. 2d 293, 296 n.2 (D.D.C. 2011) (quoting *Stokes v. Dist. of Columbia*, 502 A.2d 1006, 1009 (D.C. 1985)).

Steinberg's claims for monetary damages under § 1983 against D.C. and for injunctive relief against named defendants to go forward. *Steinberg v. Gray*, 815 F. Supp. 2d 293 (D.D.C. 2011).

On November 8, 2011, the case was reassigned to the undersigned Judge upon Judge Kennedy's retirement from the bench. [25]

Discovery closed on July 16, 2012. The parties and Court agreed to depositions of Fire Chief Ellerbe, as well as former fire Chiefs Rubin and Thompson to be conducted by Mr. Steinberg after that date. These depositions were initially scheduled for July 30, 2012. *See* Defs. Notice of Filing, September 11, 2012 [55]; Pl. Second Mot. to Extend the Discovery Deadline to Conduct Depositions [54]. However, just four days before these depositions were to take place, Mr. Steinberg received a letter from Chief Ellerbe advising him that he would be conditionally reinstated and awarded retroactive back pay and benefits. Pl. Br. at 4; Pl. Ex. F; Defs. Ex. I. The letter stated that Mr. Steinberg's reinstatement into an administrative position within the department was "contingent upon [his] completion and return of standard forms"; that Mr. Steinberg was to "remain in the administrative position pending verification of [his] Emergency Medical Technician certification," successful completion of a "Suitability Determination," conducted by the department, and a "reinstatement physical." Pl. Ex. F; Defs. Ex. I. After the reinstatement letter was received, upon agreement of both parties, the depositions were temporarily postponed. Pl. Second Mot. to Extend the Discovery Deadline ¶ 3; Defs. Notice of Filing.

Defendants have moved for summary judgment. [45] They argue that (1) all of Mr. Steinberg's claims are barred by the applicable statute of limitations, Defs. Br. at 18-20; Defs. Reply at 3-4; (2) Mr. Steinberg's claims for injunctive relief are moot because they "have taken the necessary steps to comply with the relief he seeks," *See* Defs. Br. at 6-8; Defs. Reply at 12-

3

13; (3) Mr. Steinberg failed to meet the requirements for establishing municipal liability under § 1983, Defs. Br. at 16-17; Defs. Reply at 7-10; and (4) Mr. Steinberg's substantive and procedural due process claims both fail on the merits, Defs. Br. at 8-15; Defs. Reply at 4-7.

On September 17, 2012, Mr. Steinberg filed his opposition to defendants' motion for summary judgment. [56] Defendants filed a Reply on October 17, 2012. [58]

### III. ANALYSIS

#### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252.

#### B. Statute of Limitations, Mootness, and Municipal Liability

Defendants propose a number of hurdles to reaching the merits of Mr. Steinberg's constitutional claims, arguing: (1) that his claims are barred by statute of limitations; (2) that his claims for injunctive relief are moot; and (3) that he fails to show "policy or custom" as required

4

to state a claim against a municipality under § 1983. For reasons stated below, this Court finds that Mr. Steinberg has satisfied his burden on all three fronts.

### 1. Mr. Steinberg's Claims Are Not Barred by the Statute of Limitations

The statute of limitations for a § 1983 violation in the District of Columbia is three years. *Steinberg*, 815 F. Supp. 2d at 300 (citing *Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998)). The statute of limitations clock begins to run "when the factual and legal prerequisites for filing suit are in place." *Id.* (citing *3M Co. v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994)). "[A]n actionable claim accrues, and the statute of limitations begins to run, when a suit thereon could first be maintained to a successful conclusion." *Id.* (citing *Toomey v. Cammack*, 345 A.2d 453, 455 (D.C. 1975)). The clock starts ticking when the plaintiff has sufficient "notice of the conduct . . . which is now asserted as the basis for [his] lawsuit." *Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002) (quoting *Fitzgerald v. Seamans*, 553 F.2d 220, 228-29 (D.C. Cir. 1977)).

Defendants argue that the statute of limitations clock started "as early as the year 2003," when Mr. Steinberg received a Notice of Intent to Terminate Disability Compensation benefits, and learned that he could not be reinstated as an EMT because he claimed that he was permanently and totally disabled. Defs. Br. at 18-19. Defendants further argue that the 2004 OEA Order "was clear in that Plaintiff was to be reinstated to the position from which he was terminated, i.e. to an EMT position," *see* Defs. Reply at 3-4, and because Mr. Steinberg insisted throughout this period that he could not work as an EMT, he was necessarily also on notice from the moment that the Order was issued that the agency would not have been able to comply with it, thereby triggering the statute of limitations clock in 2004.

Mr. Steinberg does not bring this cause of action against defendants based on his non-reinstatement, but on defendants' allegedly unconstitutional non-compliance with the OEA's

2004 Order. The key issue is not when Mr. Steinberg learned that FEMS was unwilling to reinstate him, but when he "could have brought suit to challenge the Fire Department's refusal to abide by the OEA's order." *Steinberg*, 815 F. Supp. 2d at 300. There is a genuine issue of material fact as to whether Mr. Steinberg had notice that defendant would not comply with the OEA order to reinstate and compensate him at any time before January 2009, when FEMS announced its non-compliance in its Response to OEA's 2004. Defendants' insistence that Mr. Steinberg's purported disability made compliance impossible in a way that should have been apparent to Mr. Steinberg at the moment the Order was issued seems to overstate the predictability of the legal implications of the 2004 Order. Mr. Steinberg insists that his "claimed disability statues . . . did not relieve Defendants of their obligation to comply with the 2004 OEA Order." Pl. Br. at 26. If true, this proffered interpretation would mean that Mr. Steinberg would not have been on Notice of defendants' non-compliance with the Order simply by virtue of his own disability, as defendants insist. For purposes of summary judgment, Mr. Steinberg's interpretation is plausible enough to create a genuine issue of material fact as to whether he was on Notice prior to Defendants 2009 Response to the 2008 Order. Mr. Steinberg's claims will not be dismissed as untimely.

### 2. Mr. Steinberg's Request for Injunctive Relief is not Moot

A dispute may be rendered moot where the contested conduct has been voluntarily discontinued if "(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Ariz. Pub. Serv. Co. v. E.P.A.,* 211 F.3d 1280, 1296 (D.C. Cir. 2000). "Voluntary cessation of challenged conduct moots a case . . . only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors, Inc. v. Slater*, 528

U.S. 216, 222 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)). And the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (internal quotations and citations omitted).

Defendants argue that Mr. Steinberg's claims are moot because they have "provided [him] with the relief he seeks in this action." Defs. Br. at 8. Their exclusive support for this claim is the July 26, 2012 letter to Mr. Steinberg from Chief Ellerbe. Defs. Br. at 8 (citing Defs. Ex. I).

This Court finds that defendants have failed to meet their "heavy burden" to establish mootness based on voluntary discontinuation. *See Adarand*, 528 U.S. at 222. The letter constitutes a *step* towards compliance with the 2004 OEA order, not a "complete[] and irrevocabl[e] eradicat[ion] [of] the effects of the alleged violation." *See Ariz. Pub. Serv. Co.,* 211 F.3d at 1296. The letter leaves several aspects of defendants' compliance open and contingent on Mr. Steinberg's future actions. It states that Mr. Steinberg's reinstatement into an administrative position within the department will be "contingent upon [his] completion and return of standard forms"; that Mr. Steinberg "shall remain in the administrative position pending verification of [his] Emergency Medical Technician certification," successful completion of a "Suitability Determination" conducted by the department, and a "reinstatement physical." Pl. Ex. F; Defs. Ex. I. These express conditions on defendants' compliance belie their assertion that they have completely satisfied the requirements of the 2004 order. Moreover, Mr. Steinberg claims that, as of September 17, he had not yet received a paycheck, and had "not received any orientation into the personnel procedures he is expected to follow and is reprimanded when he fails to follow them." Pl. Br. at 6. Defendants have begun moving towards compliance with the 2004 order, but their actions are not sufficient to render Mr. Steinberg's claims for injunctive relief moot.

7

Accordingly, this Court will not dismiss Mr. Steinberg's claims for injunctive relief based on mootness.[2]

### 3.  Mr. Steinberg Has Properly Supported his Claim for Municipal Liability

Municipalities and other local governmental bodies may be sued under 42 U.S.C. § 1983. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978).  However, municipal liability is limited: "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997); *see also id.* ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."). Instead, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *See id.* at 402-404; *Canton v. Harris*, 489 U.S. 378, 392 (1989); *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986); *Monell*, 436 U.S. at 694.

A plaintiff may show that an action was taken pursuant to a policy or custom based on: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Coleman v. Dist. of Columbia*, 828 F. Supp. 2d 87, 91 (D.D.C. 2011) (quoting *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2002)). "[T]he identification of policymaking officials is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112,

---

[2] Defendants also argue that Mr. Steinberg "has not met his burden to demonstrate that he is entitled to injunctive relief" because he has "failed to demonstrate . . . that he will succeed on the merits of his claim." Defs. Reply at 11. This requirement applies to preliminary injunctions. Mr. Steinberg has not requested such relief, and need not satisfy this requirement here.

124 (1988); *Pembaur*, 475 U.S. at 483. This is a question of law to be resolved by the judge. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Finally, a plaintiff must also establish causation, which requires showing that the policy or custom was "the moving force of the constitutional violation." *Id.* (quoting *Monell*, 436 U.S. at 694).

Mr. Steinberg advances several theories to establish policy or custom. First, he argues that the Fire Chief was a policymaker and caused FEMS' non-compliance with the OEA order and thus the violation of his due process rights. Pl. Br. at 17-23. Second, he argues that the Mayor was deliberately indifferent to the constitutional violations being perpetrated against him. Pl. Br. at 23-24. Finally, he argues that the defendants' actions were part of the District custom of not paying "wages and benefits owed to its employees." Pl. Br. at 24-25. Because this Court finds that Mr. Steinberg's first argument has merit, it need not consider his other two arguments.

This Court agrees with Mr. Steinberg that the Chief of the Fire Department is a final policymaker for the purposes of decisions not to reinstate and compensate agency employees against orders of the OEA. While the Fire Chief is not a policymaker when he acts in accordance with personnel policies and administrative decisions, *see Coleman*, 828 F. Supp. 2d at 91-92, he *is* a policymaker when he exercises the inherent power of his office to resist their implementation. Thus present matter is distinct from *Coleman*, where this Court concluded that the Fire Chief was not a final policymaker for purposes of removing a fire captain. *Coleman*, 828 F. Supp. 2d at 91-92; *cf.* Defs. Reply at 9. In that case, this Court referred to a provision of the D.C. Code specifically granting the Mayor power to "suspend, with or without pay, and remove all officers and members of the Fire Department of the District of Columbia . . . ," *Coleman*, 828 F. Supp. 2d at 92 (quoting D.C.Code § 5–402(a)), and concluded that because the Code included no "specific grant of authority" to the Fire Chief over these matters, and because the "Mayor and

9

the City Council expressly reserved supervisory powers to themselves," the Chief could not be a final policymaker on these issues. *Id.* The Court also noted that defendant "was required to follow the recommendation of the Trial Board and unable to increase the penalty recommended by a Trial Board" and thus was "constrained in his exercise of discretion and, therefore, not a final policy maker." *Id.* at 92. Because the Chief's actions were "constrained by policies not of that official's making" he could not be a policy maker. *Id.* at 92 (citing *Byrd v. Dist. Of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011)).

By contrast, neither the Mayor nor the Fire Chief have authority under the D.C. Code to do what Mr. Steinberg accuses them of here: namely, to *ignore* a ruling the OEA. Whereas the Chief in *Coleman* was merely implementing the decision made by the Trial Board, in the present matter the Chief cannot hide behind any "policies not of [his] making" because his alleged actions were based only on his own unconstrained discretion as the leader of FEMS.

Mr. Steinberg also identifies several sources which confirm that the Chief acted as a final policymaker in resisting compliance with the OEA order. First, several Mayoral orders expressly delegate relevant policymaking authority over personnel decisions to the Fire Chief. *See* Pl. Br. at 20-21 n.4 (citing Mayor's Orders (1) 2008-81, (2) 2004-117, and (3) 2000-83, Pl. Ex. K). Second, defendants appear to concede that the Fire Chief had exclusive and final authority over this matter. The District responded to an interrogatory asking them to "identify every person or persons who had the authority to reinstate Mr. Steinberg . . . between May 12, 2004 and present" by stating "the Fire Chief had the authority to reinstate Mr. Steinberg" and listing all fire chiefs from 2004 to present. *See* Def. District of Columbia's Answers to Pl. First Set of Interrogatories at 3, Sept. 17, 2012, Pl. Ex. J. Assistant Fire Chief Kenneth Jackson responded to a question asking him what steps he had taken to identify "the person or persons who made the decision to

10

not reimburse Mr. Steinberg for lost pay and benefits" by stating "The person would be the fire chief." Pl. Br. at 18 (quoting Deposition of Kenneth Jackson, May 7, 2012, Pl. Ex. I). And, in response to a question asking about what effort he made to find out who decided to respond to the OEA's 2008 order on compliance, Jackson stated that he made no effort to find out who that person was because "Ultimately, it would be the chief." *Id.*

Mr. Steinberg must also show a genuine issue of material fact as to whether the Fire Chief's action was the "moving force" behind the alleged violation of his constitutional rights. *See Monell*, 436 U.S. at 694.

Defendants argue that "no one made the decision not to reinstate Plaintiff and reimburse him for lost pay and benefits and/or not to respond to the Office of General Counsel's September 11, 2008 Order on Complaint [sic]." Defs. Br. at 17. But this argument lacks merit. Even if it is true that "no one" inside the agency decided not to respond to the 2004 OEA order, *someone* decided to file the agency's January 2009 response asserting that it would not comply with the order and to send the July 2012 letter to Mr. Steinberg offering him conditional reinstatement and back-pay. Both of these actions may constitute affirmative acts of non-compliance with the OEA order and, as reviewed above, Mr. Steinberg has offered substantial evidence tracing these actions to the Chief. There is a genuine issue of material fact as to whether the Chief was the "moving force" behind the non-compliance with the OEA order. Accordingly, Mr. Steinberg's municipal liability claim under § 1983 may survive summary judgment.

### C. Mr. Steinberg's Constitutional Claims

This opinion now turns to examine whether defendants' non-compliance with the OEA order is an act of constitutional magnitude. Mr. Steinberg's § 1983 claims rely on both substantive and procedural due process theories. The Court concludes that the substantive due

process claim will not survive this motion for summary judgment, but the procedural due process claim will survive.

### 1. Mr. Steinberg's Substantive Due Process Claim Does Not Survive Summary Judgment

Substantive due process protects against "government power arbitrarily and oppressively exercised." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). To establish a violation of substantive due process, a plaintiff may show that the challenged action impacts a "fundamental right." *See, e.g.*, *Washington v. Glucksberg,* 521 U.S. 702, 720-22 (1997). A plaintiff may also succeed by showing "a substantial infringement of state law prompted by personal or group animus." *George Washington Univ. v. Dist. of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003) (citing *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988); *Tri Cnty. Indus., Inc. v. Dist. of Columbia*, 104 F.3d 455, 459-60 (D.C. Cir. 1997)). Finally, even without alleging violations of a fundamental right or illegal animus, a plaintiff may succeed by showing that the challenged government action is "legally irrational" in that it is "not sufficiently keyed to any legitimate state interests." *Washington Teachers' Union Local No. 6, Am. Fed'n of Teachers, AFL-CIO v. Bd. of Educ. of the Dist. of Columbia*, 109 F.3d 774, 781 (D.C. Cir. 1997) (quoting *Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 943-44 (D.C. Cir. 1988)); *see also Dominion Cogen, D.C., Inc. v. Dist. of Columbia,* 878 F. Supp. 258, 264 (D.D.C. 1995) ("There is no question that a cause of action for violation of substantive due process exists where a party has been injured by the government's deliberate disregard of fundamental legal processes."). This option applies only to "actions that in their totality are genuinely drastic." *Tri Cnty. Indus.,* 104 F.3d at 459. Thus, "[a] mere state law violation does not give rise to a substantive due process violation, although 'the manner in which the violation occurs as well as its consequences

are crucial factors to be considered.'" *Id.* at 459 (quoting *Comm. of U.S. Citizens*, 859 F.2d at 944).

In *Elkins v. District of Columbia*, the D.C. Circuit affirmed summary judgment against a substantive due process claim that relied on the "legally irrational" theory. 690 F.3d 554 (D.C. Cir. 2012). The plaintiff had obtained necessary permits to renovate her home, but city officials believed her construction work exceeded the parameters of those permits, issued several "stop work" orders, and obtained a warrant to search her home. *Id.* at 558-60. She alleged that the "stop work" orders and home search violated her substantive due process rights because the defendants knew that the permits she held had been validly issued. *Id.* at 562. The Court found that this told "only part of the story" in that the evidence also showed that defendants had "a good faith belief" that the construction exceeded the scope of the permits. *Id.* This good faith belief showed that the challenged government actions were based, in part, on a legitimate government purpose and therefore could not constitute the "grave unfairness" required for a substantive due process claim. *Id.* The fact that, after the challenged actions occurred, plaintiff's construction plans were upheld as within the scope of her permit did not change this analysis. *Id.*

Mr. Steinberg does not allege that the defendants violated any "fundamental right," *cf. Glucksberg*, 521 U.S. at 720-22, nor does he allege that defendants' actions were motivated by personal or group animus. *Cf. George Washington Univ.* 318 F.3d. at 209. Steinberg rests his substantive due process claim on allegations that defendants' non-compliance with the OEA's 2004 decision "deprived [him] of his property without adequate reason or sufficient justification related to a legitimate government purpose." Pl. Br. at 8. He asserts a property interest in the OEA orders, *see* Pl. Br. at 7-8, and claims that defendants deprived him of that interest in a manner that was "legally irrational." Pl. Br. at 8.

13

This Court finds that Mr. Steinberg has a protected property interest in the OEA orders, *See Steinberg*, 815 F. Supp. 2d at 301-02, but defendants' actions (or non-actions) in depriving him of this interest were not "legally irrational." *Cf. Washington Teachers' Union*, 109 F.3d at 781. Steinberg's consistent claims that he was unable to work as an EMT provide defendants with a non-irrational reason to flout the order. Defendants insist they could not comply with the order to reinstate plaintiff as an EMT as long as Mr. Steinberg continued to insist that he was permanently and totally disabled. Defs. Br. at 11-15; Defs. Reply at 2, 3, 7. The 2004 order specifies that the agency must "return Employee to the position he held prior to his removal," Defs. Ex. A, and the 2008 order on compliance echoes this language. Defs. Ex. F. For Mr. Steinberg, this reasonably translates to an order to reinstate him as an Emergency Medical Technician.[3] Mr. Steinberg has consistently asserted that he is not capable of working in that position. He stopped appearing for work as an EMT in 1995 when he filed his initial disability claim. Defs. Br. at 2. In pursuing administrative decisions on his disability claims in 2003, Mr. Steinberg again represented that he was permanently and totally disabled and that he was "not able to return to previous position." Defs. Br. at 3; Defs. Ex. C. In defendants' January 2008 Response to the order on compliance, they insisted that they could not comply with the order because Mr. Steinberg "has stated that he is permanently and totally disabled." Finally, in Mr. Steinberg's May 1, 2012 deposition, the following colloquy occurred:

---

[3] This is not inconsistent with this Court's discussion of the statute of limitations, *see Supra* Subsection III.B.1, where this Court found that Mr. Steinberg's contrary reading – which allowed for his reinstatement into another position pending his disability – was sufficiently plausible for purposes of summary judgment to allow him to avoid defendants' argument that he was necessarily on notice that FEMS would not comply with the 2004 Order from the moment it was issued. The burden on a plaintiff who seeks to demonstrate a substantive due process violation without a fundamental right or animus is substantial, and the hurdle of "legal rationality" that a defendant must meet to escape liability is very minimal. This is true even when it arises in a motion for summary judgment, where the Court takes the facts in light most favorable to the plaintiff. Thus, plaintiff's plausible interpretation was good enough to survive summary judgment on the statute of limitations question, but not on the merits of the substantive due process claim.

> **Question**: And was your understanding that you would be reinstated to your position as an EMT?
> **Answer**: I'm not sure how that was logistically going to work. I don't know.
> **Question**: . . . [W]as it your understanding that you would go back to the fire department as an EMT?
> **Answer**: No, because we still had the issue of being reassigned elsewhere in the Fire Department or a total permanent disability.
> **Question**: Why was that an issue for you?
> **Answer**: Because I was not able to go back to the same, if I went back to the same venue, we'd have the same problems.

Pl.'s Dep. At 49:12-50:3.

For purposes of a substantive due process claim, this justification proffered by defendants for ignoring the OEA order is a sufficiently "legitimate government purpose" to satisfy the very low hurdle of rationality required for this type of claim. It may not excuse the government's flouting of the OEA's order for purposes of D.C. law, nor fully explain defendants' failure to comply with the separate component of the order mandating back pay, *see* Defs. Ex. A, nor does it imply that Mr. Steinberg was on notice that FEMS would not be complying with the order from the moment it was issued for purposes of the statute of limitations discussed above.[4] Nonetheless, it provides the defendants with an explanation for their refusal to comply with the Order as a whole that passes the very low hurdle of "legal rationality" for substantive due process claims.

This case is like *Elkins*, where the government took actions against plaintiff based on a mistaken belief that she was exceeding the scope of those permits. 690 F.3d at 561-62. Even though defendants were mistaken, and acted in a manner that may have been contrary to D.C. law, their actions were not "legally irrational" and so the court rejected plaintiff's substantive due process claims. *Id.* Similarly, defendants' non-compliance with the OEA order in this case may be contrary to D.C. law, but is supported by a rational justification. Accordingly, this Court

---

[4] *See Supra* Subsection II.B.1.

will GRANT defendants' motion for summary judgment as to Mr. Steinberg's substantive due process claim.

### 2. Mr. Steinberg's Procedural Due Process Claim Survives Summary Judgment

To state a procedural due process claim, a plaintiff must establish that (1) he had a protected property or liberty interest, *see Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005); (2) he was knowingly, but not negligently, deprived of that interest, *see Daniels v. Williams*, 474 U.S. 327, 332-36 (1986); (3) without adequate procedural remedies, *see Matthews v. Eldridge*, 424 U.S. 319 (1976). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

As discussed above, this Court concludes that Mr. Steinberg had a property interest in the OEA orders.[5] And, also as discussed above, Mr. Steinberg has introduced sufficient evidence to establish a genuine issue of material fact as to whether the Fire Chief intentionally caused the non-compliance with the 2004 OEA order.[6] Thus, the only remaining issue is whether Steinberg received all the process that he was due.

Defendants argue that Steinberg was afforded due process because no "action was taken against him without him first being provided sufficient notice as required by the Comprehensive Merit Personnel Act." Defs. Br. at 10 (citing D.C. Code §§ 1-601.01 through 1-635.11). True as this may be, it misses the point. Mr. Steinberg concedes that his claims were "properly adjudicated through the CMPA" and that he "received adequate due process in the pre-order stage of the OEA proceedings." Pl. Br. at 10. The alleged violation occurred only after Mr.

---

[5] *See supra* Subsection III.C.1.
[6] *See supra* Subsection III.B.3.

Steinberg emerged victorious from this administrative process but found that his employer refused to comply. Pl. Br. at 10. Defendants' assertion that Mr. Steinberg received adequate process through the CMPA is irrelevant.

Defendants also argue that Mr. Steinberg could have brought an action compelling the agency to comply with this order in the D.C. Superior Court, and that the availability of this post-deprivation remedy precludes a due process claim. Defs. Br. at 11-15. But even assuming such an enforcement action were available in D.C. Superior Court, it would not constitute adequate process here.

Under D.C. Code § 1-606.03(d), "[a]ny employee . . . may appeal the decision of [OEA] to the Superior Court of the District of Columbia . . . and such Court may affirm, reverse, or modify such decision, or take any other appropriate action the Court may deem necessary." Defendants insist that an employee who received a favorable ruling in the OEA could bring an action in Superior Court to obtain judicial enforcement of that ruling against a recalcitrant agency, but they cite no examples where such an action has been brought. *See* Defs. Br. at 11-15. Mr. Steinberg insists that no such action is authorized by the D.C. Code, which provides only for appeals, not enforcement proceedings. Pl. Br. at 13-14.

Regardless of whether such an action exist, it would not provide adequate process in this case. Under local rules, a litigant would have 30 days from an OEA order to bring such an action. *See* Sup. Ct. Civil Procedure Rules, Title XV, Rule 1.  This Court finds that such a scheme cannot constitute a "meaningful post-deprivation remedy," *see Hudson*, 468 U.S. at 533, because it irrationally and unfairly would put the onus of immediately filing an action on an employee who had just received a *favorable* ruling from the OEA within a short time. Such a scheme would render OEA orders meaningless – an agency would be able to grasp victory from

the jaws of defeat and nullify an adverse order merely by doing nothing for 31 days. Moreover, the proposed "enforcement" action is nowhere codified in D.C. law (and may not exist at all) but is rather derived from defendants' creative reading of the D.C. Code provision which authorizes the Superior Court to "take any other appropriate action the Court may deem necessary." D.C. Code § 1-606.03(d). This scheme, if it even exists, does not qualify as a meaningful post-deprivation remedy. Accordingly, Mr. Steinberg's procedural due process claim will survive this motion for summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, this Court rejects defendants' arguments with respect to statute of limitations, mootness, and municipal liability, GRANTS defendants' motion for summary judgment with respect to Mr. Steinberg's substantive due process claim, and DENIES it with respect to his procedural due process claim.

A separate order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, Chief Judge, on November 2, 2012.