UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVE STEINBERG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 09-1299 (RCL) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION**

At a hearing on June 12, 2013, the Court granted defendant's renewed motion for summary judgment, ECF No. 77, as to plaintiff's claims under 42 U.S.C. § 1983 against the District. *See* Minute Order June 12, 2013. This opinion provides the Court's reasoning for that holding.

Also at the June 12, 2013 hearing, the Court gave plaintiff an opportunity to provide additional authority on whether the Court should exercise supplemental jurisdiction over plaintiff's remaining claims for injunctive and declaratory relief under the D.C. Code. Having reviewed this additional briefing, the Court now declines to exercise supplemental jurisdiction over these remaining D.C. Code claims against the District. Rather than dismissing the claims, the Court will give plaintiff the opportunity to voluntarily dismiss the action within five days of this opinion.

I.     BACKGROUND[1]

"In 2004 the District of Columbia Office of Employee Appeals (OEA) ordered the District of Columbia Fire and Emergency Medical Services Agency (FEMS) to reinstate plaintiff Steve Steinberg as an Emergency Medical Technician (EMT) and award him back pay. For eight years the agency did neither." *Steinberg v. Dist. of Columbia*, 901 F. Supp. 2d 63 (D.D.C. 2012). Mr. Steinberg filed this action in 2009, claiming violations of his constitutional rights, seeking reinstatement, back pay, and damages. *Id.*

In 2012, "Mr. Steinberg received a letter from Chief Ellerbe advising him that he would be conditionally reinstated and awarded retroactive back pay and benefits." *Id.*; *see also* Reinstatement Letter, July 26, 2012, Defs.' Ex. I, ECF No. 77-1.

Two previous opinions substantially narrowed the issues of the case, *see id.*; *Steinberg v. Gray*, 815 F. Supp. 2d 293 (D.D.C. 2011),[2] leaving only three outstanding claims: (1) a damages claim under 42 U.S.C. § 1983 against the District of Columbia for procedural due process violations; (2) a claim against current Fire Chief Ellerbe, in his official capacity, for injunctive relief (reinstatement) under the D.C. Code; and (3) a claim against Daryl Staats, the Chief Financial Officer for FEMS, for injunctive relief (back pay) under the D.C. Code.

Mr. Steinberg deposed former Fire Chief Dennis L. Rubin, with leave of Court, after the Court's most recent opinion, *see* Order, Dec. 10, 2012, ECF No. 67; Rubin Dep., Defs.' Ex. O, Jan. 29, 2013, ECF No. 77-1, and defendants filed the instant motion shortly thereafter.

---

[1] The Court presumes familiarity with the underlying facts of the case and here provides only those facts at the core of the present dispute. For a more detailed review, see *Steinberg v. Dist. of Columbia*, 901 F. Supp. 2d 63 (D.D.C. 2012).
[2] This 2011 opinion is by Judge Kennedy, who handled the case until his retirement from the bench.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material if it could affect the outcome of the case. *Id*. A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. The non-movant, however, must establish more than "the existence of a scintilla of evidence" in support of his position, *id*. at 252, and may not rely solely on allegations or conclusory statements, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. *Monell* Liability

Municipalities and other local governmental bodies may be sued under 42 U.S.C. § 1983. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978). However, municipal liability is limited: "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Commis. of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). The Supreme Court has "consistently refused to hold municipalities liable under a theory of respondeat superior." *Id.* Instead, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury by pointing to, for instance, an action of a final policy maker within the government. *See Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

Under this method of showing policy or custom, the Supreme Court has noted the "special difficulties" that arise when "it is contended that a municipal policymaker has delegated his policymaking authority to another official":

> If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability. If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). In providing guidance to courts attempting to work through these difficulties in cases, the Court emphasized that "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority." *Id.* at 130.

### III. MR. STEINBERG'S SECTION 1983 CLAIM AGAINST THE DISTRICT DOES NOT SURVIVE SUMMARY JUDGMENT

In order for his section 1983 claim against the District to survive this motion for summary judgment, Mr. Steinberg must identify a genuine issue of material fact as to whether the unconstitutional action was taken pursuant to a policy or custom.

Mr. Steinberg argues that one of the Fire Chiefs—acting as a final policy maker—was the "moving force" behind the decision to ignore the 2004 OEA order mandating his reinstatement and back pay. Pl.'s Opp'n 9-11. He points to two types of circumstantial evidence in support of this theory. First, he points to evidence that the Fire Chief would *ordinarily* be the person in charge of reinstating an officer, including statements to this effect by Assistant Fire Chief Kenneth Jackson,[3] former Fire Chief Adrian Thompson (2001-2006),[4] former Fire Chief Dennis Rubin (2007-2011),[5] and current fire Chief Kenneth Ellerbe (2011-present).[6]

---

[3] Mr. Steinberg points to the following statements made by Assistant Fire Chief Kenneth Jackson:

4

      **Q:** [W]e asked you to identify the person or persons who made the decision to not reimburse Mr. Steinberg for lost pay and benefits as was ordered by Judge Hollis. What efforts did you make to identify that person?
      **A:** The person would be the fire chief.
Jackson Dep. 31:10-16, Pl.'s Ex. H, ECF No. 81-2.
      **Q:** . . . [W]ho was the person who made the decision to respond or not respond to the addendum order on compliance dated August 13, 2008 and the Office of General Counsel's September 11, 2008 order on compliance? Did you make any effort to find out who that person or persons is or was?
      **A:** I did not.
      **Q:** Why?
      **A:** Ultimately, it would be the chief.
*Id.* at 33:5-14.
      **Q:** Please identify every person or persons who had the authority to reinstate Mr. Steinberg with the D.C. Fire & Emergency Medical Services Department between May 12, 2004 and present.
      **A:** . . . [T]he Fire Chief had the authority to reinstate Mr. Steinberg.
Def. District of Columbia's Answers to Pl.'s First Set of Interrogatories 3 (answered by Kenneth E. Jackson for FEMS).

[4] Mr. Steinberg points to the following exchange from the deposition of former Fire Chief Adrian Thompson:
      **Q:** Whose responsibility would it have been in 2004 had [the OEA] ordered Mr. Steinberg reinstated into his position at EMS? Whose responsibility would it have been to have that take place?
      **A:** I would have been – I probably seen the order or was apprised of the order myself. I would have given it to my general counsel to review for lead sufficiency. [*sic*] n She would have advised me what our action should have been or action we should take. She would give a copy to the assistant fire chief of services, who would contact office of compliance to start processing Mr. Steinberg back into the agency.
      **Q:** And that's under your supervision?
      **A:** Yes, sir.
      **Q:** So that was in your authority to do?
      **A:** Yes, sir.
Thompson Dep. 8:20-9:16, Pl.'s Ex. J, ECF No. 81-2.

[5] He also points to an exchange from the deposition of former Fire Chief Dennis Rubin
      **Q:** I asked [Assistant Chief Jackson] during the course of the deposition whose authority would it be to reinstate Mr. Steinberg when he sought to be reinstated pursuant to [the OEA] order and he said that authority would be the authority of the chief. And I want to know if you would agree or disagree with that. . . .
      . . .
      **A:** I would say that it would be the chief's, but much like the color of law, there's a few exceptions.
          The exception would be if the chief, me or any chief, would be overruled by the mayor. Even the chief, even the fire guy of the District of Columbia has a boss. So if for some reason the mayor said, stop all engines, in this or any case, they would have stopped.
          And I would have thought in a case that would involve the kind of backpay that we are describing, the chief financial officer would also have to give the chief thumbs up before he proceeds.
Rubin Dep. 26:20-27:21, Pl.'s Ex. K, ECF No. 81-2.

[6] Mr. Steinberg cites several exchanges from the deposition of current Fire Chief Kenneth Ellerbe:
      **Q:** You made the decision to reinstate him to his position back in 1997?
      **A:** Well, I made the decision to send the letter for reinstatement.
Ellerbe Dep. 10:14-17, Pl.'s Ex. L, ECF No. 81-2.

Second, he points to evidence that notice of his situation and the unfulfilled 2004 OEA order was provided to agents of FEMS in the form of service of process on four occasions between 2004 and 2009:

> (1) The 2004 OEA order was itself mailed to D.C. Corporation Counsel attorney Kevin McDougald on May 12, 2004, *see* Pl.'s Opp'n 11; *see also* Defs.' Ex. A, *Steinberg v. D.C. Fire & Emergency Med. Servs. Dep't*, OEA Matter No. 1601-0183-97, (Hollis, A.J.) (May 12, 2004), ECF No. 77-1;

> (2) Mr. Steinberg's 2008 motion for enforcement of the OEA order was mailed to D.C. Office of the Attorney General attorney Kevin Turner on July 17, 2008, Pl.'s Opp'n 11; Employee's Mot. for Enforcement, Pl.'s Ex. E, *Steinberg v. D.C. Fire & Emergency Med. Servs. Dep't*, OEA Matter No. 1601-0183-97, ECF No. 81-2;

> (3) The OEA's subsequent Order on Compliance was mailed to Mr. Turner on August 13, 2008, Pl.'s Opp'n 11; Addendum Decision on Compliance, Pl.'s Ex. F, *Steinberg v. D.C.*

---

**Q:** When you sent this letter, were you directed to send it, or did you have to ask authority to send it? Let me take that back. Was your decision to reinstate him, Mr. Steinberg, was it your decision?
. . .
**A:** The decision came from our general counsel, whose direction I followed.
. . .
**Q:** And that is under your authority?
**A:** Yes, but, actually, the general counsel operates out of the Office of the Attorney General
**Q:** But the general counsel of FEMS is under your authority?
. . .
**A**: Yes.
**Q:** Now, in the broad sense of the word, did you have to ask anybody's permission for you to send this letter to Mr. Steinberg?
**A:** No.
**Q:** The authority to send this letter to Mr. Steinberg was yours?
**A:** Well, there has to be an approval for us to reinstate an employee.
**Q:** And whose approval must that be from?
**A:** From the city administrator.
**Q:** How does the city administrator fit in this in the chain of command?
**A:** We have an authorized strength level, and if we are directed to reinstate someone, and we are already at our authorized strength level, we would have to receive permission to hire beyond our authorized strength.
    Consequently, any reinstatements go to the city administrator.
**Q:** Was that the only proviso that stood between you and your authority to reinstate Mr. Steinberg?
. . .
**A:** There are some other considerations for terms of reinstatement.
**Q:** So my understanding of where we are now is we are – in terms of numbers, are we at the – when you say strength, if I misunderstand this, tell me, you are saying strength of numbers of how many people the city is authorized by law to employ at any one time?
**A:** That's correct.
**Q:** And so you got the approval to do it, vis-à-vis the numbers?
**A:** That's correct.

Ellerbe Dep. 11:12-14:8.

*Fire & Emergency Med. Servs. Dep't*, OEA Matter No. 1601-0183-97, ECF No. 81-2; and

(4) The complaint and summons in this lawsuit was sent by certified mail to Chief Rubin on July 17, 2009, but was signed for by Deborah Bass. *See* Return of Service, ECF No. 2-2.

Mr. Steinberg does not offer any evidence that these agents passed along the notice they received to the Fire Chiefs. Nor did Mr. Steinberg's counsel apparently depose any of these agents.

<u>*In response*</u>, defendants rely on statements by Chiefs Thompson[7] and Rubin[8] disclaiming any awareness (while in office) of Mr. Steinberg's case and of the unfulfilled 2004 OEA decision

---

[7] Defendants cite the following exchanges from Chief Thompson's deposition:
    **Q:** So in 2004 you were the chief?
    **A:** That's correct, yes, sir.
    **Q:** In 2004 there was an order by the Office of Employee Appeals by Daryl Hollis, Senior Administrative Judge, regarding Mr. Steinberg. Do you know anything about or do you remember that order?
    **A:** I can't recall anything about the order at all. I don't remember seeing it. I don't remember seeing the order or reading the order either concerning the situation with him.
Thompson Dep. 7:12-22.
    **Q:** Do you have any recollection, Mr. Thompson, of receiving or seeing the OEA order that was issued in this case?
    **A**: Not that I can recall.
Thompson Dep. 22:1-4.

[8] Defendants cite the following exchanges from Chief Rubin's deposition, which was taken after the Court's most recent opinion in this case:
    **Q:** I'm going to ask you to go back to 2008, a long time ago. In August, September, October, do you recall being served with -- the department being served with a request for an order of compliance with the OEA, Office of Employee Appeals?
    **A:** I do not.
    **Q:** So you have no personal knowledge of that?
    **A:** I don't think so, no, sir.
Rubin Dep. 19:3-12
    **Q:** Do you recall . . . in any manner talking to [FEMS general counsel] about the request by Mr. Steinberg to have an order of compliance with Judge Hollis' order of 2004?
    **A:** No, sir, I do not recall having that discussion.
Rubin Dep. 20:13-19.
    **Q:** Do you recall there being a filing by the District of Columbia and by your office on January 29, 2009, which is referenced in that document there, stating that Mr. Steinberg could not be, would not be or was not going to be reinstated to his position with the fire department?
    **A:** I recall it based on the fact that I saw it when I walked in this office. Prior to that, sir, I was not aware of the document.
    **Q:** And do you recall . . . several months later, there was a filing -- there was a lawsuit against named – a series of named Defendants, Adrian Fenty and probably you and others in the organization in the department and in the political structure by Mr. Steinberg, alleging that he

up to *and through* the date on which this case was filed and served on defendants in 2009. Defendants also note that Chief Ellerbe acted to bring the agency into compliance with the 2004 order soon after he took office by sending Mr. Steinberg the reinstatement letter in 2012.

*Analysis*:  The Court's previous opinion in this case concluded that "Mr. Steinberg ha[d] offered substantial evidence tracing these actions to the Chief" such that he could survive a motion for summary judgment on this claim.  *Steinberg*, 901 F. Supp. 2d at 73.  Since that opinion was issued, the record before the Court has expanded: the parties subsequently deposed former Chief Rubin, whose testimony provides critical additional support for defendants' theory. Based on the record *now* before the Court, no reasonable jury could conclude that any of the Chiefs had notice of Mr. Steinberg's case and failed to act.  Accordingly, Mr. Steinberg cannot establish municipal liability, and the Court now grants defendants' renewed motion for summary judgment as to Mr. Steinberg's damages claim against the District.

Mr. Steinberg's evidence showing that the Chief would *ordinarily* be responsible for reinstatement of an employee does not suffice to allow his claim to survive summary judgment. No reasonable jury could weigh this type of evidence against the Chiefs' testimony and find in favor of Mr. Steinberg.

---

hadn't been reinstated and asking for reinstatement and backpay back to 1997. Do you recall that lawsuit having been filed?
**A:** No, sir, I do not, sir.
Rubin Dep. 20:20-21:19.
**Q:** You did not reinstate Mr. Steinberg with the fire department, correct?
**A:** I did not.
**Q:** And it's my understanding that you did not know about the order of reinstatement. Correct?
**A:** I was not aware of it, no, ma'am.
**Q:** So it's fair to say that you could not reinstate him because you did not know about the order to reinstate?
**A:** I was not aware.
Rubin Dep. 40:13-41:1.

True, as Mr. Steinberg's counsel pointed out at Oral Argument held on June 6, 2013, and again at the hearing conducted on June 12, 2013, Chief Thompson does not testify that he was never notified of Mr. Steinberg's case, but that he has no present memory of this occurring. *See* Thompson Dep. 7:12-22, 22:1-4 (quoted above at note 8). Notably, counsel's similar characterization of Chief Rubin's testimony, made at the hearing on June 12, 2013 regarding, is inaccurate. Chief Rubin went beyond disclaiming any present memory of Mr. Steinberg's case and actually asserted that he was not made aware of it:

> **Q:** You did not reinstate Mr. Steinberg with the fire department, correct?
> **A:** I did not.
> **Q:** And it's my understanding that you did not know about the order of reinstatement. Correct?
> **A:** I was not aware of it, no, ma'am.
> **Q:** So it's fair to say that you could not reinstate him because you did not know about the order to reinstate?
> **A:** I was not aware.

Rubin Dep. 40:13-41:1. Even as to Chief Thompson, the distinction is important, but does not tip the balance in favor of plaintiff. Chief Thompson has no present recollection of having been notified of Mr. Steinberg's case, and Mr. Steinberg has failed to introduce *any* evidence demonstrating that Chief Thompson was notified. A jury could only conclude that Chief Thompson was on notice based on speculation.

Even on the eve of trial, after the filing of the pretrial statement, the Court gave plaintiff an opportunity to point to any evidence whereby a jury verdict could be sustained that one of the Fire Chiefs before Ellerbe actually knew and he could not do so.

Similarly, Mr. Steinberg's evidence regarding service of process is not adequate to allow his claim to survive summary judgment. All of the four instances of service relied upon by Mr. Steinberg point to service on a party other than the Fire Chief. Defs.' Ex. A; Pl.'s Ex. E; Pl.'s Ex. F, Return of Service, ECF No. 2-2. But Mr. Steinberg has offered no evidence that any of

9

these notices were ever passed along to the Fire Chief.  No reasonable jury could weigh Mr. Steinberg's circumstantial evidence against the direct testimony from the fire Chiefs stating that they were not aware of Mr. Steinberg's case and find in favor of Mr. Steinberg.  *See Anderson*, 477 U.S. at 247.  Even if all of Mr. Steinberg's evidence is "believed, and all justifiable inferences are . . . drawn in his favor," his claim cannot survive summary judgment here.  *Id*. at 255.

Nor is it possible to impute the District's attorneys' knowledge of Mr. Steinberg's case to the Fire Chief by appealing to the common law of agency.  *Cf.* Pl.'s Opp'n 11; Pl.'s Proposed Jury Instruction No.1—Municipal Liability Under 42 U.S.C. § 1983, ECF No. 95-3 ("[I]f you find that the acts of the Fire Chief *or his Agent/attorney* deprived Mr. Steinberg of his property rights, the District of Columbia is liable for such deprivations." (emphasis added)).  Such a move is prohibited by the Supreme Court's repeated command that, when it comes to constitutional claims against municipalities, there is no *respondeat superior* liability.  *See, e.g., Connick*, 131 S. Ct. at 1364; *Bryan Cnty.*, 520 U.S. at 403.  Indeed, at the hearing conducted on June 12, 2013, Mr. Steinberg's counsel conceded that *respondeat superior* liability was proscribed, but, with his next breath, asked the Court to find municipal liability here by imputing the act of an agent (i.e. a lawyer for the District of Columbia who was put on notice of Mr. Steinberg's case) to the principal (i.e. the Fire Chief).  This attempted distinction between agency law and *respondeat superior* liability is unfounded—not least because *respondeat superior* seems, itself, to be a doctrine of agency law.  *See* Black's Law Dictionary (9th ed. 2009) (defining *respondeat superior* as "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.").  The Court rejects

this supposed distinction, and with it, plaintiff's efforts to use agency law to circumvent the requirements of *Monell*.

Finally, at the June 12, 2013 hearing, Mr. Steinberg's counsel implored the Court not to allow the District to escape liability by insulating its leadership from difficult decisions—not to allow them to "bury their heads in the sand" while potentially unconstitutional conduct goes unchecked. In this respect, this case resembles *Praprotnik*, where the Supreme Court held that a man who claimed he had been fired from his municipal job in retaliation for First-Amendment-protected activities could not state a § 1983 claim against the municipality because the supervisors who decided to fire him were not final policy makers and because he could not show that those who *were* final policy makers actually participated in or approved of the decision to terminate his employment. 485 U.S. at 128-29. The Court explained:

> Respondent contends that the record can be read to establish that his supervisors were angered by his 1980 appeal to the Civil Service Commission; that new supervisors in a new administration chose, for reasons passed on through some informal means, to retaliate against respondent two years later by transferring him to another agency; and that this transfer was part of a scheme that led, another year and a half later, to his layoff. *Even if one assumes that all this was true, it says nothing about the actions of those whom the law established as the makers of municipal policy in matters of personnel administration.*

*Id.* at 128 (emphasis added). As in *Praprotnik*, Mr. Steinberg's case must fail because he has failed to provide any evidence that would allow a reasonable jury to conclude that one of the final decision makers (i.e., the Fire Chiefs) was aware of his case, and thus can be charged with a decision to ignore the OEA order and not to reinstate him. *See Anderson*, 477 U.S. at 247. Because he cannot show "policy" or "custom" needed to establish municipal liability, his claim against the district will be dismissed.

## IV. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S D.C. CODE CLAIMS

Plaintiff's remaining claims for injunctive and declaratory relief are under D.C. Law, not federal law. *See* Pl.'s Resp. 1, ECF No. 103 (conceding this characterization of his remaining claims). It is left to this Court's discretion as to whether to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining claims. *Id.* at 2. "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005).

Here, the Court finds these factors weigh in favor of declining to exercise supplemental jurisdiction. This Court's judicial economy would be served by declining to exercise supplemental jurisdiction. Comity would be served by allowing the D.C. Courts to address these remaining issues, which concern matters of D.C. law and administration. As to convenience and fairness, the Court takes comfort in the fact that the plaintiff will not be time-barred from refiling in the D.C. Courts as the statute of limitations is tolled while his claim under 42 U.S.C. § 1983 was pending plus 30 days, so long as the plaintiff voluntarily dismisses his claims. *See* 28 U.S.C. § 1367(d). Accordingly, the Court will decline to exercise supplemental jurisdiction and will allow plaintiff to voluntarily dismiss his action within five days of this opinion.

## V. CONCLUSION

Defendants' motion for summary judgment is granted as to Mr. Steinberg's section 1983 claim against the District, and plaintiff shall voluntarily dismiss his all of his remaining claims, which are under D.C. Law, within five days. An Order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on July 2, 2013.